UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MATTHEW G. LAVOIE,      *
                          *
           Petitioner,     *
                          *
    v.                    *     Civil Action No. 1:13-cv-10959-IT
                          *
ANTHONY MENDONSA,     *
                          *
          Respondent.    *

MEMORANDUM & ORDER

April 20, 2016

TALWANI, D.J.

      Petitioner Matthew Lavoie ("Lavoie" or "Petitioner") has filed a Petition for Writ of Habeas Corpus [#1].  Lavoie contends that his conviction and incarceration for murder violate federal law because (1) he was denied his right to a public trial under the Sixth Amendment when his trial counsel decided not to object to the closure of the courtroom for two days during jury voir dire proceedings without Lavoie's knowing assent, and (2) he was denied his right to effective assistance of counsel when his trial counsel did not object to the courtroom closure. For the following reason, the petition is DENIED.

      I.     Factual and Procedural Background

      In May 2001, Lavoie was indicted by a Middlesex County grand jury for the murder of Westley Vaanen and for the unlawful possession of a firearm.  Suppl. Answer ("S.A.") 70, 72 [#15].  Vaanen was shot three times and died on March 7, 2001.  Id. at 23.  At the time of his death, Vaanen lived with Kevin Fuller and Fuller's girlfriend, Samantha Litalien.  Id.  In the weeks prior to Vaanen's death, Lavoie stayed at the residence for roughly four nights each week. Id.  After Vaanen's death, Fuller took money and cocaine from Vaanen's pockets and split it

with Litalien and Lavoie.  Id.  Fuller, Litalien, and Lavoie disposed of Vaanen's body and
evidence of the murder.  Id.  After his arrest, Lavoie first maintained to police that he did not kill
Vaanen but assisted Fuller in disposing of the body and evidence.  Id. at 23-24.  After a break in
the interview with police, Lavoie admitted that Fuller had given him the gun and that he had shot
Vaanen.  Id. at 24.

     The jury voir dire process in Lavoie's murder trial took place on November 20, 2003, and
November 24, 2003.  S.A. 216-17.  On both days court officers told Lavoie's family members to
leave the courtroom when the potential jury members entered and informed Lavoie's family that
they could reenter when the jury had been chosen.  Id. at 216, 219.  The trial court had not
ordered the courtroom closed, had not received a request that the courtroom be closed, and was
not aware that the courtroom had in fact been closed to Lavoie's family.  Id. at 219.

     On December 16, 2003, the jury found Lavoie guilty of second-degree murder.  Id. at
215.[1]  On November 9, 2006, the Appeals Court of Massachusetts denied his appeal and also
upheld the denial of his motion for a new trial.  Id.; Commonwealth v. Lavoie, 856 N.E.2d 917
(Mass. App. Ct. 2006) (table).  The Supreme Judicial Court denied further review on February 1,
2007.  S.A. 215; Commonwealth v. Lavoie, 861 N.E.2d 28 (Mass. 2007) (table).

     On December 31, 2007, Lavoie filed a second motion for a new trial on the grounds that
his right to a public trial under the Sixth Amendment had been violated when the courtroom was
closed to the public during jury voir dire, his counsel did not object, and Lavoie did not give his
knowing waiver.  S.A. 215.  The trial court conducted an evidentiary hearing on August 28, 2008
and September 11, 2008, after which the trial judge found it "likely" that Lavoie's trial attorney
knew about Lavoie's right to a public trial and that he did not discuss that right with Lavoie.  Id.

---

[1] The jury acquitted him of the gun possession charge.  Id.

at 219.[2]  Although Lavoie's trial attorney did not specifically remember Lavoie's family being

excluded, he testified that "as a matter of practice" he did not object to family members being

asked to leave the courtroom and in fact preferred that family members not be in the courtroom

during jury selection so they might not comingle with jurors.  Id. at 220.  Furthermore, although

Lavoie's trial attorney did not recall the specific exclusion in this case, he did remember his

belief that Lavoie's mother was an "emotional individual" who may have been a "distraction."

Id.  The trial judge concluded that Lavoie's trial attorney had "consciously decided" to not object

to the removal of Lavoie's family during jury selection.  Id.

The trial court denied Lavoie's petition on April 2, 2009.  Id.  The trial court found that

the courtroom had been closed to the public in violation of Lavoie's Sixth Amendment right and

also held that Lavoie had not waived his Sixth Amendment right to a public trial.  Id. at 225-26.

However, the trial court also held that Lavoie's trial counsel's decision not to object was "not an

unreasonable tactical decision" and that the courtroom closure "did not materially impact the

defendant's case or materially influence the verdict," and concluded that therefore Lavoie was

not entitled to a new trial.  Id. at 229.  Lavoie appealed the trial court's decision on April 14,

2009.  Id. at 21.

On October 3, 2011, the Appeals Court of Massachusetts reversed the trial court and

remanded the case to the Superior Court.  Id. at 282; Commonwealth v. Lavoie, 954 N.E.2d 547

(Mass. App. Ct. 2011).  The Appeals Court noted the trial court's determinations that the

courtroom was closed and that Lavoie did not knowingly waive his Sixth Amendment rights.

---

[2] The transcript of the first day of the evidentiary hearing could not be produced because the
court reporter could not find the disk.  S.A. 241 n.6.  As neither party objects to the trial judge's
findings of fact, the court refers to those findings as evidence of what was presented at the
hearing.

S.A. 284-87; Lavoie, 954 N.E.2d at 550-55.  Based on Appeals Court precedent, including

Commonwealth v. Edward, 912 N.E.2d 515 (Mass. App. Ct. 2009), which post-dated the trial

court decision, the Appeals Court held that the right to a public trial can only be waived with the

defendant's "personal, knowing assent."  S.A. 287, 290; Lavoie, 954 N.E.2d at 554-55 & nn.10-

12.  The Commonwealth applied to the Supreme Judicial Court of Massachusetts ("SJC") for

leave to obtain further appellate review and the SJC granted the application on November 30,

2011.  S.A. 320; Commonwealth v. Lavoie, 958 N.E.2d 529 (Mass. 2011) (table).

  The SJC affirmed the trial court's order denying a new trial on January 11, 2013.  S.A.

578; Commonwealth v. Lavoie, 981 N.E.2d 192 (Mass. 2013).  The SJC explained that, although

the Appeals Court had previously held that a knowing waiver from the defendant was required to

waive a Sixth Amendment right to a public trial, that issue had never been before the SJC.  S.A.

582; Lavoie, 981 N.E.2d at 197-98.  The SJC then held that Lavoie had waived his right to a

public trial through his counsel's failure to object and deemed his counsel's decision to be

"tactical."  S.A. 582; Lavoie, 981 N.E.2d at 198.  Furthermore, the SJC agreed with the trial

court that the decision by Lavoie's trial counsel not to object was "not manifestly unreasonable

when made" and therefore Lavoie's ineffective assistance of counsel claim failed as well.  S.A.

582-83; Lavoie, 981 N.E.2d at 198-99.

  Lavoie filed the instant Petition for Writ of Habeas Corpus [#1] on April 18, 2013.

II. Standard of Review

  The court's review of the habeas petition is governed by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, if a state court has adjudicated a claim

on the merits, the federal habeas court must defer to that adjudication unless it (1) "resulted in a

decision contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  A federal court must review de novo any federal claim not reviewed by the state court on the merits.  See Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010).

A claim is "adjudicated on the merits" if there is a "decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007) (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001)).  A state court need not explain the disposition or necessarily provide citations to federal law in order to adjudicate a federal constitutional claim "on the merits."  See Zuluaga v. Spencer, 585 F.3d 27, 29-32 (1st Cir. 2009); see also Clements, 592 F.3d at 53-54 (a state court's reference to state court decisions that themselves deal with federal constitutional issues may be sufficient to trigger deferential review under AEDPA).  Indeed, if a petitioner presents a federal claim to a state court and the state court denies relief, it is "presumed that the state court adjudicated the claim on the merits in absence of any indication or state-law procedural principles to the contrary."  Harrington v. Richter, 562 U.S. 86, 99 (2011) (citing Harris v. Reed, 489 U.S. 255, 265 (1989)).

A state court decision is "contrary to" clearly established Federal law if the court applies "a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000); Sleeper v. Spencer, 510 F.3d 32, 37-38 (1st Cir. 2007)).  A state court decision involves an "unreasonable application" of clearly established Federal law "when the state court correctly

identifies the correct legal principle, 'but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend clearly established legal principles to a new context where they should apply.'" Malone v. Clarke, 536 F.3d 54, 63 (1st Cir. 2008) (quoting Sleeper, 510 F.3d at 38).  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Under both the "contrary to" and "unreasonable application" prongs, "clearly established Federal law" refers only to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412).  If Supreme Court cases "give no clear answer to the question presented," a state court's resolution of a constitutional question may not serve as a basis for habeas relief.  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam); see also Carey, 549 U.S. at 77 (a lack of holdings from the Supreme Court regarding a topic bars a finding that a state court "unreasonably appli[ed] clearly established Federal Law.").

If a state court applied a standard that was contrary to or an unreasonable application of clearly established federal law, the federal court must conduct a de novo review of the claim. See Aspen v. Bissonnette, 480 F.3d 571, 576 (1st Cir. 2007).  Under that review, the petitioner must demonstrate that he "is in custody in violation of the Constitution or laws or treaties of the United States."  Id. at 576 (quoting 28 U.S.C. § 2254).  In other words, "a petitioner must show that his underlying detention is unlawful and not just that the state court employed faulty reasoning in his case."  Id. (citing Bronshtein v. Horn, 404 F.3d 700, 724 (3d Cir. 2005)).

Lavoie argues that the SJC never actually resolved Lavoie's federal claim on the merits and therefore the SJC decision should be reviewed de novo.  Pet'r's Mem. Supp. Pet. Writ Habeas Corpus with App. ("Pet.") 12-13 [#12].  The SJC held that "counsel may waive, with or without the defendant's express consent, the right to a public trial during jury selection where the waiver is a tactical decision as part of counsel's trial strategy." S.A. 582; Lavoie, 981 N.E.2d at 198.  Lavoie contends that this holding did not answer the question he presented to the court: whether "a defendant's waiver of the right to a public trial must be knowing, intelligent, and voluntary." Pet. 13 [#12].  Lavoie argues that the trial judge and appellate court understood his argument, but that the SJC did not.  See id. at 14.  Lavoie maintains that, by not addressing Lavoie's question directly, the SJC did not adjudicate Lavoie's federal claim on the merits and therefore the district court here need not give deference to the SJC under AEDPA.

"A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'" Clements, 592 F.3d at 52-53 (quoting Teti, 507 F.3d at 56-57).  A federal claim is also "adjudicated on the merits" when it is "adjudicated it under a state law standard that 'is at least as protective of the defendant's rights as its federal counterpart.'"  Young v. Murphy, 615 F.3d 59, 64-65 (1st Cir. 2010) (quoting Foxworth v. St. Amand, 570 F.3d 414, 426 (1st Cir. 2009), cert. denied 559 U.S. 982 (2010)).  A claim is not adjudicated on the merits when it remains "silent" on the issue.  Id. (citing Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2010)); see also Norde, 294 F.3d at 410 (reviewing a state court decision de novo because the state court "did not mention" the petitioner's Sixth Amendment claims).

Here, the SJC did adjudicate Lavoie's Sixth Amendment claims on the merits.  The SJC directly addressed the Sixth Amendment claim and denied it on substantive grounds, citing state

and federal case law.  S.A. 582; <u>Lavoie</u>, 981 N.E.2d at 197-98.  Specifically, the SJC noted that it

had previously held that the right to a public trial could be waived by either the defendant or his

or her counsel, see <u>Commonwealth v. Williams</u>, 401 N.E.2d 376, 378 (1980), and held in

Petitioner's case that a defendant's counsel could waive the right to a public trial "with or

without the defendant's express consent." S.A. 582; <u>Lavoie</u>, 981 N.E.2d at 197-98.  The SJC

then characterized the decision as "tactical" and therefore able to be waived by the trial counsel

without consulting his client.  S.A. 582; <u>Lavoie</u>, 981 N.E.2d at 198 (citing <u>Gonzalez v. United

States</u>, 553 U.S. 242, 249-50 (2008)).  Furthermore, even if the SJC's holding did not use the

precise language that Lavoie used when framing the question, by holding that counsel can waive

the defendant's right to a public trial "with or without" the defendant's express consent, the SJC

still dealt with the question, albeit with an arguably more expansive holding.

Because the SJC adjudicated Lavoie's Sixth Amendment public trial claim on the merits,

this court gives SJC's opinion deference under AEDPA.  Therefore, the court will only grant the

petition if the SJC decision is "contrary to" or involves an "unreasonable application" of "clearly

established" federal law.

The SJC dealt with Lavoie's ineffective assistance of counsel claim on the merits by

denying him relief.  S.A. 583; <u>Lavoie</u>, 981 N.E.2d at 198-99.  "Since an ineffective assistance of

counsel claim is a mixed question of law and fact, it is evaluated under the 'unreasonable

application' clause of § 2254(d)." <u>Yeboah-Sefah v. Ficco</u>, 556 F.3d 53, 70-71 (1st Cir. 2009).

III.    <u>Discussion</u>

Lavoie asserts two bases for his habeas petition: first, that he was denied his right to a

public trial under the Sixth Amendment when his trial counsel decided not to object, without

Lavoie's knowing assent, to the closure of the courtroom for two days during jury voir dire

proceedings, and second, that he was denied his right to effective assistance of counsel when his trial counsel did not object to the courtroom closure.

A.     Right to a Public Trial

Lavoie argues that three Supreme Court cases, taken together, lead to the "inescapable conclusion" that trial counsel cannot waive the defendant's right to a public trial without the defendant's knowing assent.  Pet. 18 [#12] (citing Waller v. Georgia, Presley v. Georgia, and Gonzalez v. United States).  However, these three cases do not clearly establish that counsel cannot waive a defendant's Sixth Amendment right to a public trial.

In Waller, the Supreme Court held that the right to a public trial is guaranteed by the Sixth Amendment and exceptional circumstances must exist for the *court* to *order* closure. Waller v. Georgia, 467 U.S. 39, 47 (1984).  In Presley, decided 25 years later, the Supreme Court held that the right to public trial, protected under Sixth Amendment and confirmed by the Supreme Court in Waller, extends to jury voir dire proceedings.  Presley v. Georgia, 558 U.S. 209, 212-13 (2010).  In addition, in Gonzalez, the Supreme Court held that certain rights are of a nature to be so fundamental as to require that the defendant personally waive them.  Gonzalez v. United States, 553 US 242, 248-49 (2008).  Although these cases, read together, *could* allow a court to determine that waiving the right to a public trial requires the defendant's personal assent, they do not "clearly establish" that personal waiver is required.

Waller and Presley merely establish the importance of the right to a public trial, including during the jury voir dire phase.  However, in both cases, the defendants' trial counsel objected to the courtroom closures and thus the courts did not address whether the defendants assented to any waiver by counsel nor whether such assent was necessary.  See Presley, 558 U.S. at 210; Waller 467 U.S. at 41-42.  Although the cases establish the "fundamental" nature of the right, the

discussion is directed at what is required for judges to deny the right over objection. Here, counsel did not object, and no later Supreme Court case holds that the right to a public trial can only be waived by counsel with the defendant's knowing assent.

The Supreme Court in <u>Gonzalez</u> did hold that certain enumerated rights could only be waived with the defendant's knowing assent. However, the Court in <u>Gonzalez</u> did not specify that the right to a public trial is of a "nature" as to require personal waiver by the defendant. <u>Gonzalez</u> concerned whether defense counsel could waive his or her client's right to have an Article III judge preside over jury voir dire. <u>Gonzalez</u>, 553 U.S. at 243. In its analysis, the Court in <u>Gonzalez</u> identified certain rights that required personal and knowing assent by the defendant to be waived: right to counsel, right to plead not guilty, right to waive a jury, right to testify on one's own behalf, and right to take an appeal. <u>Gonzalez</u>, 553 U.S. at 248-51. Similarly, the Court specified which rights were "trial management matters" and therefore the waiver of which would be "well suited for the attorney's own decision," including: what objections to make, which witnesses to call, and which arguments to make. <u>Id.</u> at 249-50. Notably, the Court in <u>Gonzalez</u> included two "fundamental" rights in its list of rights that do not require the defendant's personal waiver: right to be heard by an Article III judge rather than a Magistrate Judge, and right to a speedy trial. <u>Id.</u> <u>Gonzalez</u> was silent on whether waiving the right to a public trial required the personal assent of the defendant. Furthermore, no later Supreme Court case has listed the right to a public trial as one requiring personal waiver by the defendant.

In further evidence that Supreme Court law is not "clearly established" on this issue, at least two Courts of Appeal have allowed counsel to waive their clients' public trial rights without knowing assent. <u>Compare</u> <u>Guyton v. Butler</u>, 490 F. App'x 331, 333 (11th Cir. 2012) (table) ("The Supreme Court has not held that counsel cannot waive his client's right to a public

trial. . . . [T]here is no clearly established federal law stating that counsel cannot waive the right to a public trial as a strategy decision without his client's consent.") and Daughtry v. Grenier, No. 01-2466, 2002 WL 31819589, at *1 (2d Cir. Dec. 16, 2002) (table) ("[T]here is no clearly established binding precedent as to either whether personal waiver of the right to a public trial is constitutionally required, or as to whether waiver by counsel requires consultation with a client."), with Walton v. Briley, 361 F.3d 431, 434 (7th Cir. 2004) ("The record does not indicate that Walton intelligently and voluntarily relinquished a known right. Therefore, we hold that Walton's right to a public trial was not waived by failing to object at trial.").  Although none of these decisions are binding on this court, they do demonstrate a circuit split on the issue, rather than clearly established Supreme Court law on the whether the right to a public trial is waivable by trial counsel without the knowing assent of the defendant.

Furthermore, the SJC's holding that Lavoie's counsel could waive the public trial right without Lavoie's knowing assent is not inconsistent with general waiver principles.  See Gonzalez, 553 U.S. at 249-50 (acknowledging that the attorney must have control over certain trial matters).  Specifically, the SJC held that because the right to a public trial is a "tactical decision" it is is waivable by counsel.  S.A. 582; Lavoie, 981 N.E.2d at 198.  Several First Circuit cases have likewise held that the right is waivable by counsel.  See United States v. Quiles-Olivo, 684 F.3d 177, 186 (1st Cir. 2012) (defense counsel's request, granted by the trial court, that the defendant's mother be allowed into the courtroom waived any further exclusion claim); United States v. Christi, 682 F.3d 138, 142-43 (1st Cir. 2012) (trial counsel did not object to closing the courtroom at sidebar without defendant and defendant was deemed to have waived his public trial right); Bucci v. United States, 662 F.3d 18, 31-32 (1st Cir. 2011) (accepting defense counsel's tactical reasons for failing to object to a partial courtroom closure during jury

voir dire as "reasonable").

Lavoie distinguishes these cases cited by arguing that none of them specifically dealt with the situation at hand: where (1) the *defendant* lacked the knowledge of his public trial right, and (2) the courtroom closure was real (in that his family was actually excluded) and not merely theoretical. Pet'r's Resp. Opp'n Pet. Writ Habeas Corpus ("Resp.") 5-7 [#20]. In support of this position, Lavoie points to Martineau v. Perrin, 601 F.2d 1196 (1st Cir. 1979), which held that because the right to a public trial is a "constitutional right . . . , there had to be an intentional and knowing waiver." Id. at 1200. However, Martineau preceded several Supreme Court cases, including New York v. Hill, 528 U.S. 110 (2000), which held that the right to a speedy trial, another constitutional right, can be waived by counsel without the knowledge of his or her client. Id. at 114-15. Regardless, the Supreme Court has no "clearly established" law on the question, and therefore the SJC has not rendered a decision "contrary to" or "unreasonably applying" clearly established federal law, as determined by the Supreme Court.

Lavoie also suggests, for the first time in his Response, that a trial counsel cannot waive his client's right to a public trial absent the knowing assent of his client because the right to a public trial "assure[s] his own effectiveness." Resp. 2 [#20]. Lavoie quotes Waller: "The right to a public trial" ensures that "'judges, *lawyers*, witnesses and jurors will perform their respective functions more responsibly in an open court than in secret proceedings.'" Id. at 1 (quoting Waller, 467 U.S. at 46 n.4) (emphasis added by Lavoie). Lavoie takes the Waller quotation out of context. Immediately after footnote 4, Waller continues to say that "[i]n addition to ensuring that judge and *prosecutor* carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." Waller, 467 U.S. at 46 (emphasis added). Although the right to a public trial ensures that *everyone* involved in the trial

process acts appropriately, Lavoie mischaracterizes the right as being especially protective against defendants' own trial counsel.

Without "clearly established" federal law, the SJC's decision was neither "contrary to" nor an "unreasonable application" of federal law.  The SJC did not articulate "a rule different from the governing law" nor "decide[] a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." Bell, 535 U.S. at 694 (citing Williams, 529 U.S. at 405-406; Sleeper, 510 F.3d at 37-38).  Waller, Presley, and Gonzalez did not create a "governing law" requiring a defendant's knowing assent to his or her trial counsel's waiver of his or her right to a public trial, nor has the Court decided a case of "materially indistinguishable facts" to Lavoie's.  Those cases established the importance of the right to a public trial and acknowledged that some rights require a defendant's knowing assent in order to be waived by counsel, but they did not establish that the right to a public trial requires the defendant's knowing assent to be waived by counsel.

The SJC's opinion was also not an "unreasonable application" of "clearly established federal law" because the SJC did not (i) apply federal law principles to the facts of Lavoie's case in an objectively unreasonable manner; (ii) unreasonably extend clearly established federal legal principles to Lavoie's case where they should not apply; nor (iii) unreasonably refuse to extend clearly established legal principles to Lavoie's case where they should apply.  See Malone, 536 F.3d at 63.  It is not unreasonable for the SJC to consider the waiver of the right to a public trial as a "tactical" decision within trial counsel's purview and therefore waivable without the defendant's knowing assent.  Because the SJC's opinion is not "contrary to" or an "unreasonable application" of "clearly established" federal law, as determined by the Supreme Court, the first basis of Lavoie's petition is denied.

B.     Ineffective Assistance of Counsel

The Supreme Court has "clearly established" the law for ineffective assistance of counsel claims. A petitioner must establish: (1) that his or her trial counsel's performance was deficient; and (2) that his or her trial counsel's deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Williams, 529 U.S. at 390-91 ("It is past question that the rule set forth in Strickland qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'"). However, because the right at issue here, the right to a public trial, is a structural right, the petitioner does not have to meet the second part of the test. See United States v. Owens, 483 F.3d 48, 64-64 (1st Cir. 2007).

The analysis thus turns on whether the SJC "unreasonably applied" Strickland[3] to Lavoie's claims; specifically, whether Lavoie's trial counsel's performance was objectively "deficient," despite the SJC's conclusion that it was not. "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. To succeed on an ineffective assistance of counsel claim, the petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Lavoie concedes that his trial counsel gave tactical reasons for declining to object to the courtroom closure but contends that those cited tactical reasons show that Lavoie's trial counsel was "unaware" of the "significance" of the right to a public trial. Pet. 35 [#12]. Lavoie points to Bucci v. United States, a First Circuit case which held that a court could assume that a counsel's

_____

[3] The SJC applied Commonwealth v. Saferian, 315 N.E.2d 878 (Mass. 1974), the state equivalent of Strickland in Massachusetts. See Lee v. Corsini, 777 F.3d 46, 57 (1st Cir. 2015) ("[T]he state standard under Commonwealth v. Saferian . . . is the 'functional equivalent' of the federal standard of Strickland v. Washington.").

failure to object to a complete courtroom closure during jury voir dire was an unsound trial strategy.  662 F.3d at 31.  As a First Circuit case, however, <u>Bucci</u>'s reasoning does not suggest the SJC misapplied Supreme Court precedent, much less in an unreasonable way.

Lavoie also cites <u>Presley</u>, along with other cases, to challenge his trial counsel's tactical explanation for declining to object to the closure of the courtroom during voir dire, including the trial counsel's claim that he did not want Lavoie's family mingling with potential jurors.  <u>See</u> <u>Presley</u>, 558 U.S. at 215 (noting that concern about jurors mingling with members of the public could not, absent specific concerns, justify closure).  However, <u>Presley</u> concerned a *judge's* determination to close the courtroom during voir dire, over the objection of defense counsel, <u>id.</u> at 210, not a counsel's determination not to object to closure.

Furthermore, <u>Presley</u> was decided in 2010, seven years after Lavoie's counsel decided not to object to the courtroom closure.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  <u>Strickland</u>, 466 U.S. at 690.  By determining that "defense counsel's tactical decision not to object to the court room closure in the Superior Court was not manifestly unreasonable *when made*," S.A. 583; <u>Lavoie</u>, 981 N.E.2d at 199 (emphasis added), the SJC correctly applied <u>Strickland</u>.  Therefore, because the SJC did not "unreasonably apply" "clearly established" federal law, the second basis for Lavoie's petition is denied.

IV.   <u>Conclusion</u>

For the foregoing reasons, Lavoie's <u>Petition for Writ of Habeas Corpus</u> [#1] is DENIED.

IT IS SO ORDERED.

Date: April 20, 2016                                      /s/ Indira Talwani
                                                         United States District Judge